# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| DATA MARKETING PARTNERSHIP, LP et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § § | Civil Action No. 4:19-cv-00800-O |
| UNITED STATES DEPARTMENT OF LABOR et al., | § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Motion") and Brief in Support (ECF Nos. 10–11), filed February 3, 2020; Plaintiffs' Motion for Summary Judgment and Brief in Support (ECF Nos. 23–24), filed February 19, 2020; Defendants' Cross Motion for Summary Judgment, Responses to Plaintiffs' TRO Motion and Motion for Summary Judgment, and Combined Brief in Opposition (ECF Nos. 25–28), filed March 9, 2020; Plaintiffs' Consolidated Reply Brief in Support of Summary Judgment and Injunction as well as Opposition to Defendants' Cross Motion for Summary Judgment (ECF No. 29), filed April 6, 2020; Plaintiffs' Reply (ECF No. 30), filed April 7, 2020; and Defendants' Reply (ECF No. 36), filed April 24, 2020. After reviewing the briefing, factual record, and relevant law, and for the following reasons, the Court **GRANTS** Plaintiffs' Motion for Summary Judgment and **DENIES** Defendants' Cross Motion for Summary Judgment. Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction is **DENIED as moot.**

## I.  BACKGROUND

Data Marketing Partnership ("DMP") is a Texas limited partnership that specializes in the production and sale of its limited partners' ("Limited Partners") electronic data to third party purchasers. LP Management Services, LLC ("LPMS") is the general partner of DMP. This case arises out of an adverse advisory opinion (the "Department's Opinion") issued by the Department of Labor (the "Department") in response to a request (the "Request") by LPMS. LPMS requested confirmation from the Department that the proposed plan (the "Plan") is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002(1) (West 2019) ("ERISA") as a single-employer welfare benefit plan and that DMP's Limited Partners are "participants" as defined by ERISA. In response, the Department's Opinion concluded that the Plan is not governed by any title of ERISA, the limited partners are not "participants," and that one common-law employee is not a sufficient basis for the Plan to cover any number of Limited Partners.

Plaintiffs, DMP and LPMS (sometimes collectively, "Plaintiffs"), filed this lawsuit to challenge the Department's Opinion. The facts are largely undisputed.[1] The key issues are (1) whether the Plan is a single-employer welfare benefit plan, (2) whether the Limited Partners are "working owners" and bona-fide partners such that they are "participants" under ERISA, and (3) whether any number of Limited Partners may participate in an ERISA plan alongside at least one common-law employee. The Court finds the Limited Partners are working owners and bona-fide partners. As such, the Limited Partners may participate in the Plan if at least one common-law employee is covered by the Plan. The Department's Opinion is arbitrary and capricious under the APA and contrary to law under ERISA. Accordingly, Defendants are enjoined from refusing to

---

[1] The parties state that this "case rests on issues of law, with no need for discovery to be conducted by either party." *See* Joint Statement 1, ECF No. 18.

acknowledge the ERISA-status of the Plan and refusing to recognize the Limited Partners as working owners of DMP.

### A.  Facts

DMP is a limited partnership with thousands of limited partners and one general partner. Compl. 1, ECF No. 1. The primary business purpose of DMP is data marketing. *Id.* Specifically, the Request stated that:

> [Limited Partners] install specific software which, among other things, tracks the capture of such data by other companies, such as Google or Facebook, and provides access of such data to [DMP]. [DMP] then decides how such data is used and sold to third-party marketing firms, generating revenue. [Limited Partners] control and manage the capture, segregation, aggregation, and sale of their own data, empowering [Limited Partners] in a manner not otherwise available to them when they utilize services over the Internet through their computers, phones, televisions, and other devices.

Request 4, ECF No. 1-3. The Request also provided that although "[t]he primary business purpose of [DMP] is the aggregation and profitable sale of electronic user data from its partners . . . [i]n addition to other inducements, including guaranteed payments, [DMP] wishes to offer access to its group health plan as an inducement to attract, retain, and motivate partners." *Id.* LPMS is the general partner, plan administrator, and named fiduciary for the Plan maintained for DMP's common-law employees and Limited Partners. *Id.*

#### 1.  The Request

On November 8, 2018, LPMS requested an advisory opinion from the Department. Request, ECF No. 1-3. The Request stated that "[t]he plan will be organized as a single-employer self-insured group health plan that will provide major medical health benefits to [DMP]'s eligible employees, along with [DMP]'s limited partners." *Id.* at 1. To provide assurances to DMP's Limited Partners that the Plan would be governed by ERISA, LPMS sought the following opinions:

(1) The single-employer self-insured group health plan sponsored by LP is an "employee welfare benefit plan" within the meaning of ERISA section 3(1).

(2) The limited partners participating in LP's single-employer self-insured group health plan are "participants" within the meaning of ERISA section 3(7).

(3) The single-employer self-insured group health plan sponsored by LP is governed by Title I of ERISA.

*Id*.

The Request continued with a detailed factual explanation concerning LPMS, the related limited partnership(s), and the proposed structure of the employee benefit plan. *Id*. at 2-6. DMP, at the time the Request was submitted[2], sought to establish a single-employer self-insured group health plan. The Request asserted that both "employees and partners are eligible to participate in the Plan." *Id*. at 4. Additionally, the Request stated that the Limited Partners regularly vote on how their aggregated data will be sold or otherwise used by DMP, commit time and service to revenue-generating activity on behalf of the limited partnership, and receive guaranteed payments in the form of income distributions. *Id.* The Request stated that limited partners "may permissibly be considered 'participants' in an ERISA-covered plan where at least one common-law employee is a participant." *Id*. To be eligible participants in the Plan, the Limited Partners must each contribute at least five-hundred hours of work per year through the generation, transmission, and sharing of their electronic data. *Id*. at 7-12. The Request went unanswered for almost a year, so Plaintiffs filed suit on October 4, 2019. Compl., ECF No. 1. As of January 30, 2020, nearly 50,000 Americans have elected to be automatically enrolled as eligible common-law employees or elected to join the Plan after signing a joinder agreement as a Limited Partner of DMP. Am. Compl. 3, ECF No. 9. A few months after suit was filed, the Department issued an advisory opinion.

---

[2] Since this request was written in 2018, the language speaks to the fact that DMP "will seek" or "seeks" to establish the Plan. The Plan has since been established by DMP. Am. Compl. at 1, ECF No. 9.

2.  *The Department's Advisory Opinion*

On February 3, 2020, Defendants issued the Department's Opinion. Advisory Op. 1, ECF No. 9-2. The Department's Opinion concluded that "ERISA does not sweep so broadly as to regulate the commercial sale of insurance in the manner proposed by [LPMS]." *Id.* The Department's Opinion articulated three reasons why the Plan was not governed by ERISA—(1) the employment relationship, (2) the ownership interest, and (3) the employee-to-partner ratio. First, according to the Department's Opinion the purported and sole "service" that the Limited Partners appear to perform for or through the partnership ("the Service") is not sufficient to establish an employment relationship. *Id.* at 2. Second, the Limited Partners do not have a "meaningful ownership interest." *Id.* at 3. Third, even if the Limited Partners could be participants in an ERISA Plan, the presence of one common-law employee is "not sufficient to extend ERISA coverage to all the limited partners, without any stated limit." *Id.* at 4.

a.  Employment Relationship

The Department's Opinion stated that the employment relationship between the Limited Partners and DMP was insufficient to satisfy ERISA because the traditional hallmarks of an employment relationship were not present. Advisory Op. 1, ECF No. 9-2. The Department concluded the following:

> You assert that limited partners would participate in global management issues through periodic votes of all partners, but you provided no information on such votes. You assert that each limited partner agrees to contribute more than five-hundred (500) hours of "work" per year through the generation, transmission, and sharing of their data, but you provide no information on how that 'work' differs in any meaningful way from the personal activities individual limited partners would otherwise engage in while using their personal devices.

*Id.*[3] Additionally, the Department concluded that the Limited Partners "do not appear to report to any assigned 'work' location or otherwise notify the partnership that they are commencing their work; and they are not required to possess any work-related skills." *Id.* ERISA plans require an employer-employee relationship, but the Department's Opinion stated that "there is no employer-employee relationship between the partnership and the limited partners, and as a matter of economic reality, it does not appear that the limited partners depend on the limited partnership as a source of business revenue."[4] *Id.* Because the work the Limited Partners perform for the partnership is not distinguishable from the partner's ordinary use of their electronic devices and "numerous firms already track . . . activities on the Internet, without claiming any employment relationship[,]" the Department concluded that the Limited Partners do not have a cognizable employment relationship with the limited partnership and could therefore not be participants in an ERISA plan. *Id.*

b. Ownership Interest

The Department's Opinion stated that "if the limited partners work[] for or through the partnership, [have] a *material ownership interest* in the partnership, and earn[] income for work that generated material income for the partnership, it would be plausible to treat them as employed in the relevant sense." *Id.* at 3 (emphasis added). Additionally, the Department stated that "in such circumstances, the partners could have dual status, like self-employed individuals who earn their income from their self-employment with respect to a group health plan." *Id.* The Department

---

[3] The Department contends that the *Darden* factors must be applied to determine who is an "employee" because the statute does not define the term in a helpful manner. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 321 (1992) (employing a common-law analysis to determine whether somebody is an employee for purposes of an ERISA plan).

[4] The Department opines that the "revenue that a limited partner could reasonably expect from the limited partnership will typically be approximately zero." Advisory Op. 3, ECF No. 9-2. The Department does not state how it reaches this conclusion.

agreed that the Limited Partners *could* be an "employer" for purposes of the maintaining the partnership's Plan and an "employee" for purposes of participating in the Plan, but only if the Limited Partners have a material ownership interest in the partnership and "meaningfully" worked and generated material income for the partnership. *Id.* The Department believed that the Limited Partners' "nominal interests do not appear to have economic or operational substance" and the Limited Partners "do not appear to perform labor for the partnership in any meaningful sense." *Id*. Additionally, the Department said there is no basis to conclude the limited partners will derive any income from the partnership for the performance of services[] and the limited partners neither take nor give directions in a work context from the partnership. *Id*. Therefore, the Department concluded that the Limited Partners cannot be participants in an ERISA plan. *Id.*

      c.  <u>Ratio of Common-Law Employee(s) to Limited Partner(s)</u>

The Department's Opinion also concluded that "the presence of a single employee participant is [not] sufficient to extend ERISA coverage to all the limited partners, without any stated limit" because "that position cannot be squared with ERISA's text." *Id*. at 3. Although the text of the governing ERISA provision states a "plan under which *one or more common law employees*, in addition to the self-employed individuals, are participants under the plan, will be covered under title I" of ERISA, the Department claimed that "the text of the regulation" will not support LPMS's position. Advisory Op. 3, ECF No. 9-2 (citing 29 C.F.R. § 2510.3-3(b)).

## B. Procedural History

Plaintiffs filed suit on October 4, 2019. Compl., ECF No. 1. After the Department's Opinion was issued, Plaintiffs filed their Amended Complaint and a Motion for Temporary Restraining Order and Preliminary Injunction. Am. Compl., ECF No. 9; TRO Motion, ECF Nos. 10–11. In the Amended Complaint, Plaintiffs asserted the following claims for relief: 1)

declaratory judgment under 29 U.S.C. §§ 1132(a)(3), (k); 2) injunctive relief under 29 U.S.C. §§ 1132(a)(3), (k), and Federal Rule of Civil Procedure 65; and 3) violations of the Administrative Procedure Act ("APA"), codified at 5 U.S.C. § 702.  The Court ordered the parties to meet, confer, and file a proposed schedule. Order, ECF No. 15. A week later, the parties submitted another Joint Status Report with alternative scheduling proposals for this case. Joint Report, ECF No. 18. After consideration, the Court directed Defendants to file a Cross Motion for Summary Judgment, consolidated with its responses to Plaintiffs' motions. Order, ECF No. 19. The pending motions are ripe for review.

## II.    LEGAL STANDARDS

### A.  Summary Judgment

The Court may grant summary judgment where the pleadings and evidence show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis of its motion and demonstrate from the record that no genuine dispute as to any material fact exists. *See Celotex*, 477 U.S. at 323. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

When reviewing the evidence on a motion for summary judgment, courts must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). If there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion. *Anderson*, 477 U.S. at 250.

## B. Administrative Procedure Act

Where the APA provides the cause of action, judicial review is limited to "final agency action." 5 U.S.C. § 704 (West 2019). "Two conditions . . . generally must be satisfied for agency action to be 'final' under the APA." *U.S. Army Corps of Eng'rs v. Hawkes Co.,* 136 S. Ct. 1807, 1813 (2016) (citing *Bennett v. Spear*, 520 U.S. 154 (1997)). "First, the action must mark the consummation of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* (quoting *Bennett*, 520 U.S. at 177–78) (internal quotations omitted)).

Under the APA, courts must hold unlawful and set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (West 2019). Courts must also set aside agency action that is "in excess of statutory . . . authority." *Id.* § 706(2)(C). Agency action is arbitrary and capricious:

> if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Tex. Oil & Gas Ass'n v. EPA*, 161 F.3d 923, 933 (5th Cir.1998) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Courts must disregard any *post hoc* rationalizations of the agency action and evaluate it solely on the basis of the agency's stated rationale at the time of its decision. *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69 (1962) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("The courts may not accept appellate counsel's *post hoc* rationalizations for agency action; *Chenery* requires that an agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself.") "Review of agency action under § 706(2)'s 'arbitrary or capricious' standard is limited to the record before the agency at the time of its decision." *Geyen v. Marsh*, 775 F.2d 1303, 1309 (5th Cir.1985); *see also Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.").

### C. ERISA Procedure

ERISA provides for judicial review in "[s]uits by an administrator, fiduciary, participant, or beneficiary of an employee benefit plan" to (1) review a final order of the Secretary [of Labor], (2) to restrain the Secretary [of Labor] from taking any action contrary to the provisions of this Act, or to (3) compel him to take action. 29 U.S.C. § 1132(k). Such suits "may be brought in the district court of the United States for the district where the plan has its principal office, or in the United States District Court for the District of Columbia." *Id.*

## III.    ANALYSIS

### A. This Court has Jurisdiction to Review the Final Agency Action Taken by the Department

The Court has jurisdiction to review this action if the Department's Opinion marks the consummation of its decision-making process and if legal consequences or obligations will flow from the decision. *Hawkes*, 136 S. Ct. at 1834. In evaluating whether a challenged agency action

meets these two conditions under *Hawkes*, courts apply a "flexible" and "pragmatic" interpretation of the APA's finality requirement. *Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011).

  1. *The Department's Opinion Marks the Consummation of the Department's Decision-making Process*

Under ERISA Procedure 76-1, the Department may issue an "advisory opinion that interprets or applies the Act to a specific factual situation." ERISA Procedure 76-1 § 3. The Department has discretionary authority to render advisory opinions. *Id.* § 5. Generally, "an advisory opinion will not be issued on alternative courses of proposed transactions, or on hypothetical situations, or where all parties involved are not sufficiently identified and described, or where material facts or details of the transaction are omitted." *Id.* "An advisory opinion is an opinion of the [D]epartment as to the application of one or more sections of the Act, regulations promulgated under the Act, interpretive bulletins, or exemptions." *Id.* § 10. "The opinion assumes that all material facts and representations set forth in the request are accurate and applies only to the situation described therein." *Id.* "Only the parties described in the request for opinion may rely on the opinion, and they may rely on the opinion only to the extent that the request fully and accurately contains all the material facts and representations necessary to issuance of the opinion and the situation conforms to the situation described in the request for opinion." *Id.* Information letters are "informational only and [] not binding on the [D]epartment with respect to any particular factual situation," as compared to advisory opinions upon which the "parties described in the request are *entitled to rely*." *Id.* §§ 10, 11 (emphasis added). The Department's own procedure, therefore, entitles Plaintiff LPMS to rely on the Department's Opinion, which Plaintiffs seek to do.

Based on the facts Plaintiff LPMS provided in the Request, the Department concluded that "the limited partners are not participants in a single-employer group health plan or in an ERISA

plan at all." Advisory Op. 2, ECF No. 9-2. Under Section 9 of ERISA Procedure, requestors of advisory opinions may withdraw requests only "prior to receipt of notice that the Department intends to issue an adverse opinion." *Id*. at 2 n.2 (citing ERISA Procedure 76-1 § 9, 41 Fed. Reg. 36281, 36283 (Aug. 27, 1976)). Since the Department's Opinion was adverse, LPMS is now unable to withdraw its Request.

The Department relies on *American Airlines, Inc. v. Herman* to support its position that the Department's Opinion constituted "tentative" or "interim" action, and thus is non-final and non-reviewable. 176 F.3d 283 (5th Cir. 1999); Combined Br. 10–11, ECF No. 28. In that case, the Fifth Circuit held the Assistant Secretary's denial of summary judgment was not final agency action because it did not impact the rights of Herman beyond prolonging the administrative process. *Id*. at 288. Courts have analogized the requirement of "final agency action" to the final judgment requirement of 28 U.S.C. § 1291, which generally prohibits appeal of an interlocutory order. *See DRG Funding Corp. v. Sec'y of Hous. & Urban Dev.*, 76 F.3d 1212, 1220 (D.C. Cir. 1996) (Ginsburg, J., concurring). The Department's Opinion in this case is distinguishable from a denial of summary judgment because the Department has no further action to take.

Lastly, the Department's Opinion states that Title I of ERISA does not govern the Plan because the Plan is not an ERISA-covered plan of any type. Advisory Op. 6 n.6, ECF No. 9-2. ("In light of our conclusion that the programs are not ERISA-covered plans . . ."). Based on its determination that the Plan is not governed by ERISA, the Department then argues that LPMS does not have standing to bring suit.[5] The Department's Opinion cannot be used as both a sword and shield. The Department cannot state that its advisory opinions are non-final in one instance and then next argue that its determination of who is "an administrator, fiduciary, participant, or

---

[5] Because ERISA only permits such suits by "an administrator, fiduciary, participant, or beneficiary of an employee benefit plan," the Department argues that Plaintiffs do not have standing. 29 U.S.C § 1132(k).

beneficiary of an employee benefit plan" should be binding for the purpose of standing. *See* Combined Br. 15 n.7, ECF No. 28. Given the lack of any further action needed (or available)[6] from the Department, the Department's Opinion marked the consummation of its decision by opining that the Plan is not governed by ERISA.

### 2. *Legal Consequences Will Flow from the Department's Opinion*

The Department argues that even if this marked the consummation of the decision-making process, Plaintiffs are not subject to any new obligations or legal consequences. Advisory Op. 6 n.6, ECF No. 9-2. Plaintiffs argue to the contrary that the lack of federal preemption under ERISA subjects the Plan to costly state regulatory enforcement. Pl.'s Mot. Summ. J. 1, ECF No 24. "The fact that the advisory opinion procedure is complete and deprives the plaintiff of a legal right . . . which it would enjoy if it had obtained a favorable resolution in the advisory opinion process denies a right with consequences sufficient to warrant review." *Envtl. Def. Fund, Inc. v. Ruckelshaus*, 439 F.2d 584, 589 n.8 (D.C.Cir. 1971) (internal quotations omitted); *see also Texas v. United States*, 201 F. Supp. 3d 810, 825 (N.D. Tex. 2016) (holding that final agency action existed in light of agency guidelines that have immediate effect on rights and regulations of the regulated parties). Agency action has legal consequences when it "has the effect of committing the agency itself to a view of the law that, in turn, forces the plaintiff either to alter its conduct or to expose itself to potential liability." *Texas v. EEOC*, 933 F.3d 433, 446 (5th Cir. 2019).

The Supreme Court's decision in *Hawkes* is instructive here because it addressed the impact of an agency's jurisdictional determination on a federal court's subject matter jurisdiction. 136 S. Ct. at 1812. In *Hawkes*, the Supreme Court addressed the legal effect of the Army Corps of Engineers issuing a jurisdictional determination of whether particular property contained

---

[6] ERISA Procedure 76-1 has no further administrative appeal process available to LPMS.

"waters of the United States." *Id.* The Supreme Court held that *both* a Corps determination that property does not contain jurisdictional waters (a negative determination) and an Army Corps determination that property does contain jurisdictional waters (an affirmative determination) give rise to a legal consequence. *Id.* at 1814; *see also EEOC*, 933 F.3d at 442 (discussing *Hawkes* in that "the issuance of JDs produced 'legal consequences,' giving plaintiffs a safe harbor or not."). Similarly, in *Frozen Food Express v. United States*, 351 U.S. 40, 44–45 (1956), the Supreme Court considered the effect of an agency order specifying which commodities the Interstate Commerce Commission believed were and were not exempt from regulation. The order was immediately reviewable because it warned every carrier of the risk of transporting those commodities without authority from the Commission. *Id.* Similarly, in this case, the Department made a jurisdictional determination that the Plan lies outside ERISA. *See Hawkes*, 136 S. Ct. at 1812. Additionally, the Department warned that LPMS would be subject to the state regulatory scheme, which the parties agree subjects LPMS to enforcement. *See Frozen Food Express*, 351 U.S. at 44–45.

In *Texas v. EEOC*, the Fifth Circuit addressed whether EEOC guidance steering employers away from considering arrest records for hiring purposes was final agency action and thus subject to review in the district court. 933 F.3d at 445. It held that the Guidance was final agency action because the Guidance created a safe harbor for employers to, in the agency's view, comply with anti-discrimination hiring policies under federal law. *Id.* Thus, employers were entitled to rely on the agency's interpretation when creating internal hiring practices regardless of whether the EEOC could, at some time in the future, change its position. Here, the Department's Opinion *removes* the safe harbor. If the Department opined that the Plan was covered by ERISA, the Plan would have the safe harbor of federal preemption, removing the Plan determinatively from the state regulatory scheme. LPMS sought the "safe harbor" determination that ERISA applies which would have

subjected the Plan to *only* the federal regulatory scheme. Advisory Op. 6 n.6, ECF No. 9-2 ("In light of our conclusion that the programs are not ERISA-covered plans, the programs would be subject to broad state insurance regulation.") The Department removed the safe harbor of federal preemption, which has legal consequences for LPMS by creating new obligations for LPMS to conform to complex state regulatory schemes.

The Department argues that if the facts change, its opinion *could* change.[7] It cites dicta from *Texas v. EEOC* to support its proposition that, under [*Luminant Generation Co. v. U.S. E.P.A.*, 757 F.3d 439, 442 (5th Cir. 2014)] if an agency can change its policy position, then the advisory opinion is not a final determination. *See EEOC*, 933 F.3d at 445 (5th Cir. 2019). Combined Brief 12, ECF No. 28. *Luminant*'s conclusion and the EPA's agency review in that case are distinguishable for two reasons. 757 F.3d at 442. First, the governing agency procedure is different. Under EPA-specific procedure, the EPA issues notices of violation and then must wait thirty days before exercising its discretion to "issue an order or administrative penalty" after a formal hearing or to "bring a civil action." 42 U.S.C. § 7413(a)(1). Second, the EPA had further decisions to make because the notice only marks the beginning of a process designed to test the agency's conclusion. *Luminant*, 757 F.3d at 442. In contrast, the Department here has informed LPMS that it has nothing to do with the regulation of the Plan, effectively determining its status as a non-ERISA plan. The Department now claims this decision was interlocutory. Combined Br.

---

[7] Plaintiffs have not indicated any intention to change the business structure and request a new opinion on new facts. It is not required to do so. Here, the parties filed cross-motions for summary judgment and do not dispute the relevant facts. Additionally, the Court of Appeals for the D.C. Circuit has rejected the reasoning that an agency's refusal to issue a favorable advisory opinion to plaintiffs was unripe where "[t]he issue presented is a relatively pure legal one that subsequent enforcement proceedings will not elucidate") *Chamber of Commerce of U.S. v. FEC*, 69 F.3d 600, 604 (D.C. Cir. 1995). The Court finds the D.C. Circuit's reasoning persuasive.

10–11, ECF No. 28. However, agencies cannot continuously evade review under the guise of "interlocutory" decisions.[8]

The Department argues that there is no "need for immediate judicial review of the Department's statement of its view of the law" because "any party that disagrees with the Department's informal opinion is under no obligation to follow it" and that if "any authority sought to implement that view of the law, it could be litigated at that point." *Id*. at 21. However, "contrary to the [Department]'s notion, parties are commonly not required to violate an agency's legal position and risk an enforcement proceeding before they may seek judicial review." *See Alaska Dep't of Envt'l Conservation v. EPA*, 540 U.S. 461, 483 (2004) (holding that the finality requirement in a statute governing the EPA was satisfied in a pre-enforcement challenge where EPA had spoken its "last word" on the legal issue in dispute and the regulated party "would risk civil and criminal penalties if it defied" the EPA's directive). On the cross-motions for summary judgment, the facts are static. ECF Nos. 23–28. The Department has spoken its last words on the legal issue in dispute, now asking LPMS to risk violating state laws if it ignores the Department's Opinion. The Court recognizes that not every advisory opinion issued by an agency will constitute final agency action. *Unity08 v. FEC*, 596 F.3d 861, 866 (D.C. Cir. 2010) (discussing the overlapping doctrines of finality, ripeness and exhaustion of administrative remedies). But it is paramount to consider the agency that issued the advisory opinion, the internal procedures, and the substance of the opinion given. *Id*. Here, the Department's Opinion satisfies the first and second

---

[8] The Supreme Court rejected this same argument in *Hawkes*. Although the Corps could revise its jurisdictional determination within five years based on new information, "that possibility [to submit new facts to the agency] . . . is a common characteristic of agency action and does not make an otherwise definitive decision nonfinal." *Hawkes*, 136 S. Ct. at 1814.

prongs of *Hawkes*. Therefore, subject matter jurisdiction exists to review the Department's Opinion.

### B.  The Department's Opinion is Not Entitled to Deference

Defendants contend that the Court should defer to its reasonable conclusion made in the Department's Opinion. Combined Brief at 21, ECF No. 28 Plaintiffs counter that the Court should set aside the Department's Opinion as arbitrary and capricious under the APA and contrary to law under ERISA. Pls.' Mot. Summ. J. 1, ECF No 24. Generally, an advisory opinion is entitled to deference as the persuasive view of the agency tasked with interpreting and enforcing ERISA's complex regulatory scheme. *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). The Supreme Court has characterized advisory opinions issued under ERISA Procedure 76-1 as "agency view[s] . . . reflect[ing] a 'body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 18 (2004) (quoting *Skidmore*, 323 U.S. at 140). Whether an advisory opinion is entitled to deference will depend on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.* Courts should:

> defer to an agency interpretation of the statute that it administers if the agency has conducted a careful analysis of the statutory issue, if the agency's position has been consistent and reflects agency-wide policy, and if the agency's position constitutes a reasonable conclusion as to the proper construction of the statute, even if we might not have adopted that construction without the benefit of the agency's analysis."

*Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*, 400 F.3d 1352, 1366 (Fed. Cir. 2005). Further, "[d]eference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate." *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 213 (1988).

*1.   The Department's Opinion Lacks Legal and Factual Support*

Defendants argue that the Department's Opinion is legally and factually supported. Advisory Op. 1, ECF No. 9-2. However, the Department fails to point to a single statute, regulation, or any governing case law that supports its imposition of newfound "materiality" standards and its "ratio" requirement on the employment and ownership qualifications for ERISA-plan participants. The Court is not persuaded that such requirements are supported by current law, as discussed below in Section III(C). Since the Department has never used these materiality or ratio standard before in its regulations or interpretations, there is no statutory interpretation to which a court must defer. *See United States v. Mead Corp.,* 533 U.S. 218, 226–27 (2001) (setting forth the framework for when and to what degree courts must defer to agency interpretation "of a particular statutory provision"). "Expanding the scope" of a regulation "in vast and novel ways is valid only if it is authorized" by the statute. *Chamber of Commerce v. Dep't of Labor*, 885 F.3d 360, 369 (5th Cir. 2018).  When an agency waits decades to discover a new interpretation of a rule it "highlights the Rule's unreasonableness," and "gives us reason to withhold approval or at least deference for the Rule." *Id*. at 380.

The Department's Opinion lacks factual support. Plaintiffs argue that the Department manipulated facts in a "conclusion-driven" analysis in the Department's Opinion. Pl.'s Mot. Summ. J. 38, ECF No 24. For example, the Request stated that "[i]ncome distributions by [DMP] to the [Limited Partners] resulting from such revenue-generating activities will be reported as guaranteed payments and will be subject to employment taxes." Request 8, ECF No. 1-3. However, the Department's Opinion stated that "the revenue the limited partner could reasonably expect from the limited partnership will typically be zero." Advisory Op. 3, ECF No. 9-2. The Department has provided no factual basis for such a conclusion. The Department's Opinion also paints in

broad, conclusory strokes in asserting that the partnership does not qualify as an employer, the Limited Partners do not qualify as employees, and the work the Limited Partners do to generate income for the partnership is not "work" at all, contrary to the Request's factual representations, because in the Department's view, the work is not "meaningful" and the Limited Partners' ownership interest is "nominal." *Id*.

   *2. The Department's Opinion is Contrary to the Department's Prior Pronouncements*

   Further, the Department's Opinion contradicts its own advocacy and its prior advisory opinions by resorting to common-law principles to determine whether the Limited Partners are "participants" under ERISA. The Department's Opinion strayed from its previous pronouncements in two key ways: (1) by imposing a common-law analysis to determine whether a working owner is an "employee" and therefore a "participant" under ERISA and (2) by analyzing the degree of control the limited partnership has over the Limited Partners. The Department previously advocated that ERISA's text resolves this question that it now seeks to answer differently. Specifically, the Department previously urged that:

> resort[ing] to common-law principles (even for guidance) is not appropriate in resolving whether working owners may be participants in ERISA plans because the *text of ERISA itself resolves that question*. Even if the Court were to consult the common law, however, it should also consider the purposes of ERISA … [b]ecause the purposes of ERISA differ from those underlying the ADA and other anti-discrimination statutes, *a test that focuses on the extent of the business's control over the working owner is not appropriate* to resolve the ERISA coverage question.

Reply 35, ECF No. 30 (citing DOL Amicus, p. 4, n. 6 (emphasis added)).[9] Plaintiffs now take the position for which the Department advocated in its *amicus* brief a year ago at the same time

---

[9] The Department filed this amicus brief in *New York v. U.S. Dep't of Labor*, 363 F. Supp.3d 109 (D.C. Cir. 2019). The Department's position in the amicus brief that the "text of ERISA itself" resolves the question of whether working owners may be participants in an ERISA plan is directly from the Supreme Court's opinion in *Yates*. 541 U.S. at 12.

Plaintiff LPMS submitted the Request, while the Department abandoned this position in favor of the common-law factors.[10]

The Department coined the term "working owner" as a term of art in a prior opinion (the "Prior Opinion"), DOL Op. No. 99-04A, the only other advisory opinion that addresses this concept. In the Prior Opinion, the Department defined "working owner" to "include '***any owner*** that earns wages or self-employment income from a company,' including sole proprietors of unincorporated businesses." DOL Op. No. 99-04A (emphasis added). The Department further stated that "working owner" means:

> any individual who has ***an equity ownership right of any nature*** in a business enterprise and who is ***actively engaged*** in providing services to that business, as distinguished from a passive owner, who may own shares in a corporation, for example, but is not otherwise involved in the activities in which the business engages for profit.

DOL Op. No. 99-04A (emphasis added). The Prior Opinion found *clear intent* from Congress, within the text of the statute, to treat working owners as participants under ERISA—forgoing the common law analysis it now claims must be used for Plaintiffs.

The Department's failure to adhere to its own articulated definition of working owner in the Prior Opinion is suspect and unsupported by present law. Nothing in the record indicates why the Department decided to impose new standards on the Plaintiffs and stray from governing law in its analysis of the Plan. The Department's Opinion serves as the sole authority contrary to Plaintiffs' legal position. As a result, the Department's Opinion is not entitled to *Skidmore*

---

[10] The Department contends that the Limited Partners must meet the test articulated in *Darden* to be an "employee" under ERISA. Combined Br. 38, ECF No. 28. The factors include skill required, the source of the instrumentalities and the tools, the location of the work, whether the hiring party has the right to assign additional projects to the third party, the extent of the hired party's discretion over when and how long to work, the method of payment, and the provision of employee benefits. *Darden*, 503 U.S. at 324.

deference. Accordingly, the Court will address the merits without deferring to the Department's Opinion.

### C. The Plan is a Single Employer Employee Welfare Benefit Plan Under Title I of ERISA

As previously explained, the Department found that ERISA did not govern the Plan. The main issues to resolve, therefore, are whether (1) the Plan is a single-employer welfare benefit plan, (2) the Limited Partners are "working owners" and bona-fide partners such that they are "participants" under ERISA, and (3) if any number of Limited Partners may participate in an ERISA plan alongside at least one common-law employee. The APA permits courts to "set aside an agency action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Sierra Club v. EPA*, 939 F.3d 649, 663 (quoting 5 U.S.C. § 706(2)(A)). An action is arbitrary and capricious if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Id.* at 663–64 (quoting *State Farm*, 463 U.S. at 43). Additionally, the Court may set aside agency action under ERISA that is contrary to law.[11] *See* 29 U.S.C. § 1132(k). Because the Court finds the Department's Opinion arbitrary and capricious under the APA and contrary to law under ERISA, the Court sets aside the Department's Opinion and finds the Plan is governed by Title I of ERISA. Because the Limited Partners are working owners and bona-fide partners, they may participate in the single-employer welfare benefit plan set up by DMP, so long as DMP covers at least one common-law employee under the Plan.

---

[11] The Court notes that these distinct standards have substantial overlap. Therefore, since the Department's analysis fails under both standards the Court will address the standards simultaneously.

ERISA is designed to protect "participants" who are "employees" that participate in employee benefit plans which are subject to its regulatory scope. *Schwartz v. Gordon*, 761 F.2d 864, 868 (2d Cir. 1985). Accordingly, ERISA has specific rules and regulations that apply to defining (1) an "employee welfare benefit plan," (2) "employees," and (3) "participants" that may participate in an "employee welfare benefit plan". 29 U.S.C.A. § 1002 (West 2019). Under ERISA, an "employee welfare benefit plan" means:

> any plan, fund, or program which was heretofore or is hereafter established or *maintained by an employer* or by an employee organization, or by both, to the extent that such plan, fund, or program was established or *is maintained for the purpose of providing for its participants* or their beneficiaries, through the purchase of insurance or otherwise ….

29 U.S.C.A. § 1002 (emphasis added). The term "participant" means "any employee … who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer …." *Id*. The term "employee," at the center of this dispute, is defined as "any individual employed by an employer." *Id*. Because an employee-employer relationship is necessary to establish an ERISA plan, defining who is an "employee" is vital.

In some instances, the *Darden* factors must be applied to determine who is an "employee" because the statute does not define the term in a helpful manner. *Darden*, 503 U.S. at 321 (employing a common-law analysis to determine whether an independent contractor is an employee for purposes of an ERISA plan). Additionally, for ERISA purposes, an equity owner may be an "employer" in one sense and an "employee" in another. *See Yates*, 541 U.S. at 12 (holding that an individual can wear two hats at the same time for the purpose of maintaining a plan as an employer but participating in the plan as an employee).

Here, the Department incorrectly concluded that the Plaintiffs' Plan did not meet the criteria for ERISA coverage. Combined Br. 38, ECF No. 28. For the following reasons, the Court

determines that Plaintiff DMP's Plan is a single employer[12] employee benefit plan under Title I of ERISA, and the Limited Partners may participate in the Plan if DMP covers at least one common-law employee under the Plan.

     1.  *The Limited Partners May Participate in the Plan as "Working Owners"*

The central issue in this case is whether the Limited Partners are "working owners." Plaintiffs argue that the Limited Partners are working owners because although they do not have many of the "hallmarks" of work in a traditional sense, in a "gig economy and the economic reality of today, the Limited Partners' work should be recognized, and the employment relationship satisfies the statutory and regulatory requirements. Pls.' Mot. Summ. J. 37, ECF No. 24. ("While that [Service] differs from being a plumber, teacher, security guard, or career bureaucrat, it is no less a form of work in the modern 'gig economy'."). The Department argues that because the Limited Partners do not fit squarely into the working owner analysis, the common-law analysis is necessary. Combined Br. 38, ECF No. 28. ("Plaintiffs' claims here do not present a clear-cut case of working owners like medical doctors who own their own practice or the law firm partners addressed by the Fifth Circuit in *House*"); *see also House v. Am. United Life Ins. Co.*, 499 F.3d 443, 450 (5th Cir. 2007) (holding that law partners may be participants in an ERISA plan). The Department urges the Court to apply the *Darden* factors. Combined Br. 41, ECF No. 28 (arguing that the statutory and regulatory provisions are ambiguous and require a common-law employment analysis under *Darden*).

---

[12] Plaintiffs additionally seek a declaration that the Plan is not a multiple-employer welfare arrangement ("MEWA") under ERISA. Since DMP is a singular entity that maintains the Plan, with LPMS as the fiduciary and DMP's Limited Partners as equity owners and participants for ERISA purposes, it is clear that there is only one employer, DMP. Pls.' Mot. Summ. J. at 7, ECF No. 24; *see* 29 U.S.C. § 1002(40) (defining a MEWA as "an employee welfare benefit plan, or any other arrangement" that provides benefits to "the employees of two or more employers" or their beneficiaries).

The reliance on *Darden* is misplaced here because whether an equity owner qualifies as a participant in an ERISA plan is analyzed solely under *Yates*. 541 U.S. at 1. There, the Supreme Court held that a working owner can wear two hats, as an employer and employee.[13] *Id.* at 16. "ERISA's text contains multiple indications that Congress intended working owners to qualify as plan participants. Because these indications combine to provide 'specific guidance,' there is no cause in this case to resort to common law." *Id.* at 12. Moreover, the *Yates* majority explicitly held that the *Darden* common-law test concerning employee qualifications to participate in an ERISA-covered plan simply did not apply because Yates was clearly a working owner of his own medical practice. *Yates*, 541 U.S. at 12, n.3 (distinguishing *Darden*). Notably, Justice Thomas noted in his concurrence in *Yates* that "members of this class [working owners] are now considered categorically to fall under ERISA's definition of 'employee'." *Yates*, 541 U.S. at 25, n.* (Thomas, J., concurring). The common-law employment analysis under *Darden* is not necessary here if the Limited Partners are working owners because working owners categorically may participate in an ERISA plan as an "employee".

Finding the *Darden* factors unnecessary for equity owners, the Court will turn to the analysis articulated by the Department in the Prior Opinion. The Department defined "working owner" as:

> any individual who has *an equity ownership right of any nature* in a business enterprise and who is *actively engaged* in providing services to that business, as distinguished from a passive owner, who may own shares in a corporation, for example, but is not otherwise involved in the activities in which the business engages for profit.

---

[13] The Supreme Court cited 26 U.S.C. § 401(c)(4) to support this proposition. *Yates*, 541 U.S. at 16 ("An individual who owns the entire interest in an unincorporated trade or business shall be treated as his own employer. A partnership shall be treated as the employer of each partner who is an employee within the meaning of [§ 401(c)(1)].").

DOL Op. No. 99-04A (Feb. 4, 1999) (emphasis added) (internal citations omitted). Therefore, for the Limited Partners to be "working owners," they must (1) have an equity ownership right of any nature in a business enterprise and (2) be actively engaged in providing services to that business.

> a. <u>The Limited Partners are Owners</u>

Defendants required for the first time in the Department's Opinion that the Limited Partners have a "material" ownership interest to be a participant under ERISA. Advisory Op. 5, ECF No. 9-2. The Department's Opinion stated that the Limited Partners' "*nominal* ownership interests do not appear to have economic or operational substance." *Id*. The Department's definition of working owner requires "an equity ownership right of any nature." DOL Op. No. 99-04A.

Here, the Limited Partners obtained an ownership interest through the execution of a joinder agreement, periodically vote on how to organize and market the aggregated "data bank," and exercise management responsibilities over the sale of this data bank to third parties. Reply 47, ECF No. 30. Because the Limited Partners have an ownership interest "of any nature," and the imposition of a "materiality" standard is arbitrary and capricious, the Limited Partners are owners. *See Luminant,* 675 F.3d at 930 (holding it was arbitrary and capricious for the agency to impose a new requirement that is neither necessary nor warranted by any applicable provision of the Act, and thus agency reliance on the requirement was unjustified).

> b. <u>The Limited Partners are Actively Engaged in Providing Services to the Partnership</u>

Next, the Limited Partners must be "actively engaged" in providing services to that business. DOL Op. No. 99-04A. The Department's Opinion states that Limited Partners are not sufficiently "active" because "allowing one's electronic data to be tracked, collected, and marketed is not 'work' or 'performing any services'" and it does "not appear to differ in any meaningful way from the personal activities . . . [the Limited Partners] would otherwise engage in while using

their personal devices." Advisory Op. 3, ECF No. 9-2. The Department's Opinion qualifies the nature of the service the Limited Partners provide to the partnership—aggregating the data generated from the ordinary use of their personal devices—as "too passive" to qualify as "work." *Id.*

Plaintiffs argue that the business venture is a form of employment innovated to take control and market their own aggregated data, rather than leave the commercial benefit to third parties. Pls.' Mot. Summ. J. 37, ECF No. 24 ("The partners are taking control of at least some portion of the data reflecting their internet usage and attempting to aggregate that data with others to create a product for which there is undeniably already a market."). Plaintiffs also argue that the business of data mining is a twenty billion-dollar industry that is gaining significant ground in the United States. *Id.* at 37 n.45.[14] Additionally, Plaintiffs argue that DMP's business enterprise is innovative because the Limited Partners' personal activities can double as a stream of income in the same way that drivers for Uber and Lift can generate income by aggregating hours driven using different ride assignment technologies even if the driver would have been driving the same routes in his personal time. Reply 44, ECF No. 30.

Defendants argue that the Department's Opinion is not arbitrary because consumers regularly and unwittingly allow third parties to aggregate their data without claiming any employment relationship, so the Plaintiffs cannot claim an employment relationship exists here. Advisory Op. 2, ECF No. 9-2. ("Allowing the partnership to track consumers' activities on the Internet is instead similar to what consumers already permit numerous firms, such as internet browsers and social media companies, to do without claiming that the tracked consumers work for

---

[14] *See* Dylan Curran, "Are you ready? Here is all the data Facebook and Google have on you," The Guardian, March 30, 2018. https://www.theguardian.com/commentisfree/2018/mar/28/all-the-data-facebook-google-has-on-you-privacy.

them."). The Department views the business enterprise as a "sham" created as a means to provide health insurance coverage to the Limited Partners. *Id*. (stating that the only purpose of the limited partners joining the partnership is to acquire health insurance).

Plaintiffs are correct that the Limited Partners are "involved in the activities in which the business engages for profit." Reply at 51, ECF No. 30 (The Limited Partners "provide personal services for the partnership by contributing electronic data that individually and collectively is a material, income-producing factor for the partnership."). The Limited Partners download specific software on their device, the software collects data, and the data is then aggregated with the other partners' data to form a data bank owned by the partnership. *Id.* at 4. The Limited Partners then collectively decide what to do with that data bank on behalf of the partnership. *Id.* The only distinction between the Limited Partners here and the law partners in *House* is the *type* of work performed. *Id.* ERISA does not demand such a distinction.

The Limited Partners are not passive owners in the way that a passive owner in a publicly traded corporation will receive distributions without having any say in business operations. Therefore, whether the Department considers the Plaintiffs' business enterprise "legitimate" or "meaningful" is irrelevant because the Limited Partners are not merely passive owners under the Department's own test. *See State Farm,* 463 U.S. at 43 (holding that agency action is "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider"). The Department simply does not agree that the services are a legitimate business enterprise, which is not a consideration required by law. The Court will not impose an extra-textual view of what services or industry in which business enterprises must engage to qualify for ERISA coverage. The Limited Partners are actively engaged in the partnership's business. Accordingly, the Court finds

that the Limited Partners are working owners because the Limited Partners have an equity ownership interest of any kind and are actively engaged in partnership's business.

### 2.  The Limited Partners are Bona-Fide Partners

The Department's Opinion states that the requisite employment relationship between the Limited Partners and DMP does not exist. Advisory Op. 3, ECF No. 9-2. ("The regulations emphasize the need for an employment or self-employment services-based relationship with respect to the partners participating in a group health plan maintained by a partnership."). Under ERISA regulations, a partner must be a "bona-fide partner" to establish an employment relationship between the partner(s) and the partnership. 29 C.F.R. 2590.732(d)(2)-(3). Whether an individual is a bona-fide partner is determined based on "all the relevant facts and circumstances, including whether the individual performs services on behalf of the partnership." *Id.*

The Department's Opinion categorizes the Limited Partners as "merely consumers purchasing health coverage in exchange for premiums and an agreement that the partnership can track their personal activities on their personal devices." Advisory Op. 4, ECF No. 9-2 ("You have provided no facts that would support a conclusion that the limited partners are meaningfully employed by the partnership or perform any services on its behalf."). Plaintiffs argue that the Limited Partners "provide personal services for the partnership by contributing electronic data that individually and collectively is a material, income-producing factor for the partnership." Reply 51, ECF No. 30. The bona-fide partner analysis simply requires a more-than-pretextual relationship between the employer and employee. The Court already concluded that the Limited Partners are working owners who are actively engaged in the business. Given that the bona-fide partner standard is a lower threshold, the Limited Partners are bona-fide partners of DMP.

### 3. ERISA States no Limit to the Number of Working Owners That May Participate in a Plan Alongside at Least One Common-Law Employee

Lastly, the Department's Opinion concluded that "the presence of a single employee participant is [not] sufficient to extend ERISA coverage to all the limited partners, without any stated limit" because "that position cannot be squared with ERISA's text." Advisory Op. 3, ECF No. 9-2. Because in its view "the text of the regulation" does not allow the Plan to be arranged as proposed in the Request, the Department seeks to impose some imprecise employee-employer ratio requirement on Plaintiffs. *See id.* In response, Plaintiffs argue that one common-law employee is sufficient because ERISA regulations state that a "plan under which *one or more common law employees*, in addition to the self-employed individuals, are participants under the plan, will be covered under Title I" of ERISA. 29 C.F.R. § 2510.3-3(b) (emphasis added); Reply at 33, ECF No. 30.

ERISA's "one or more common-law employees" regulation unambiguously means that so long as one common-law employee is covered by the plan, it is an ERISA plan in which an unlimited number of working owners may participate. *Id.*; *see Robertson v. Alexander Grant & Co.*, 798 F.2d 868, 869 (5th Cir. 1986) (finding a benefit plan for only partners is not covered by ERISA without the presence of a *single* common-law employee). But once the Plan covers a single common-law employee, ERISA imposes no ratio requirement on the number of working owners that may participate. Therefore, the Department's Opinion is incorrect to specify the number of working owners eligible for the Plan beyond that set out by regulation. The Court concludes that the presence of a single common-law employee may extend ERISA coverage to any number of working owners.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Summary Judgment (ECF No. 23), **DENIES** Defendants' Cross Motion for Summary Judgment (ECF No. 25), and **DENIES as moot** Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 10). Because the Limited Partners are working owners and bona-fide partners, they may participate in the single employer welfare benefit plan set up by DMP, so long as DMP employs at least one common-law employee. Accordingly, the Department's Opinion is set aside as arbitrary and capricious under the APA and contrary to law under ERISA and Defendants are **ENJOINED** from refusing to acknowledge the ERISA-status of the Plan or refusing to recognize the Limited Partners as working owners of DMP.

**SO ORDERED on this 29th day of September, 2020.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**